**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GLYNN WILSON,

                                        Plaintiff,

            v.                                                    No. 1:21-cv-8318

VERITAS CONSULTING GROUP INC.,
HEATHER JOY KOCH, ROBERT KOCH,
RON MCINTYRE, and STEVEN
GOLDBERG,

                                        Defendants.

## <u>OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>

**GUSRAE KAPLAN NUSBAUM PLLC**

/s/ Martin H. Kaplan
Martin H. Kaplan
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
(212) 809-4147
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Plaintiff Glynn Wilson*

1

# TABLE OF CONTENTS

TABLE OF CONTENTS       i

TABLE OF AUTHORITIES       ii

PRELIMINARY STATEMENT       1

BACKGROUND       3

    I.   Dr. Wilson Refused to Associate with Defendants       3

    II.   In September 2021, Dr. Wilson Learned that Defendants were Advertising Him as a Veritas "Team" Member and "Advisor"       4

    III.   To Argue that Dr. Wilson's Complaint Fails to State a Claim, Defendants Rely on Their Own Affidavits       5

LEGAL STANDARD       7

ARGUMENT       8

    I.   Defendants' Affidavits and Exhibits are Irrelevant to Whether Dr. Wilson Adequately Alleged His Claim       9

    II.   The Complaint Explains Why Veritas's "Secretary and Treasurer," "Senior Partner," and "Partner" are Liable for Violating Section 51       12

    III.   Dr. Wilson's Section 51 Claim is Not Time-Barred       14

      A.   The Complaint Does Not Allege Facts Suggesting, Let Alone Proving, that Dr. Wilson's Claim is Time-Barred       15

    B.   Dr. Wilson Discovered Defendants' Section 51 Violation Just One Month Before Filing the Complaint       16

      C.   Defendants' Affidavits Highlight Even More Fact Questions       17

    IV.   Dr. Wilson's Entitlement to Statutory Damages is Yet Another Fact Question   20

CONCLUSION       21

# TABLE OF AUTHORITIES

**Cases**

Arista Records, LLC v. Doe 3, 604 F.3d 110 (2d Cir. 2010)                                  13

Ayala v. Metro One Sec. Sys., Inc., No. 11-CV-233 JG ALC, 2011 WL 1486559 (E.D.N.Y.
    Apr. 19, 2011)                                                                       7, 11

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)                                         8, 11

Brooks v. The Topps Co., No. 06 Civ. 2359 (DLC), 2007 WL 4547585 (S.D.N.Y. Dec. 21,
    2007)                                                                                  17

Brown v. Marriott Int'l, Inc., No. 14CV5960SLTMDG, 2017 WL 4484194 (E.D.N.Y. Sept.
    29, 2017)                                                                               9

Castel v. Jean Norihiko Sherlock Corp., 159 A.D.2d 233 (1st Dep't 1990)                   16

Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002)                         9, 10

Collinton v. Bunt, No. 15-CV-6580 (CS), 2016 WL 7443171 (S.D.N.Y. Dec. 27, 2016), aff'd,
    709 F. App'x 82 (2d Cir. 2018)                                                         11

Comolli v. Huntington Learning Centers, Inc., 117 F. Supp. 3d 343 (S.D.N.Y. 2015) 17, 18

D'Andrea v. Rafla-Demetrious, 3 F. Supp. 2d 239 (E.D.N.Y. 1996), aff'd, 146 F.3d 63 (2d
    Cir. 1998)                                                                             16

DeLuca v. AccessIT Grp., Inc., 594 F. Supp. 2d 54 (S.D.N.Y. 2010)                         10

Duran v. Henkel of America, Inc., 450 F. Supp. 2d 337 (S.D.N.Y. 2020)                     20

E.B. v. Liberation Publications, Inc., 7 A.D.3d 566 (2d Dep't 2004)                       16

Ellul v. Congreg. of Christian Bros., 774 F.3d 791 (2d Cir. 2014)                          7

Faulkner v. Beer, 463 F.3d 130 (2d Cir. 2006)                                              9

Firth v. State, 98 N.Y.2d 365 (2002)                                                    17, 18

Fischer v. Forrest, 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 1063464
    (S.D.N.Y. Mar. 21, 2017)                                                            14, 18

Friedl v. City of New York, 210 F.3d 79 (2d Cir. 2000)                                     9

G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521 (S.D.N.Y. 2002)                    7

Gitter v. Gitter, 396 F.3d 124 (2d Cir. 2005)                                             20

Giuffre v. Dershowitz, 410 F. Supp. 3d 564 (S.D.N.Y. 2019)                                18

Goldberg v. Danaher, 599 F.3d 181 (2d Cir. 2010)    7

Gregoire v. Putnam's Sons, 298 N.Y. 119 (1948)    16

Kopec v. Coughlin, 922 F.3d 152 (2d Cir. 1991)    9

Kramer v. Time Warner, Inc., 937 F.2d 767 (2d Cir. 1991)    10

Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC, 23 F. Supp. 3d 344 (S.D.N.Y. 2014)
    13

Love v. Morrow & Co., 193 A.D.2d 586 (2d Dep't 1993)    16

Marshall v. Marshall, No. 08 Civ. 1420 LB, 2012 WL 1079550 (E.D.N.Y. Mar. 30, 2012),
    aff'd, 504 F. App'x 20 (2d Cir. 2012)    8, 14

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993)    7

Nussenzweig v. diCorcia, 9 N.Y.3d 184 (2007)    14, 17

Pelton v. Rexall Sundown, Inc., No. 99 CIV 4342 JSM, 2001 WL 327164 (S.D.N.Y. Apr. 4,
    2001)    16

Rare 1 Corp. v. Moshe Zwiebel Diamond Corp., 13 Misc. 3d 279 (Sup. Ct. 2006)    18

Rothman v. Gregor, 220 F.3d 81 (2d Cir. 2000)    7, 10

Russo v. Huntington Town House, Inc., 184 A.D.2d 627 (2d Dep't 1992)    15

Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988)    13

Scheuer v. Rhodes, 416 U.S. 232 (1974)    7, 11

Sheppard v. United States Tennis Ass'n, Inc., No. 17CV5719AMDSMG, 2018 WL 3941941
    (E.D.N.Y. Aug. 16, 2018)    10

Villager Pond, Inc. v. Town of Darien, 56 F.3d 375 (2d Cir. 1995)    7

Voronina v. Scores Holding Co., No-16-CV-2477 (LAK), 2017 WL 74731 (S.D.N.Y. Jan. 5,
    2017)    7, 14, 15

Welch v. Mr. Christmas Inc., 57 N.Y.2d 143 (1982)    17, 20

Zhao v. L&K Rest., Inc., No. 14-CV-6103 VEC, 2015 WL 1809115 (S.D.N.Y. Apr. 21, 2015)
    10

Zoll v. Jordache Enter. Inc., No. 01 Civ. 1339, 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002)
    14

Zoll v. Ruder Finn, Inc., No. 01 Civ. 1339(CSH), 2004 WL 42260 (S.D.N.Y. Jan. 7, 2004)  9,
    16

**Statutes**

N.Y. C.P.L.R. § 215(3)                                                                                14

N.Y. Civ. Rights § 50                                                                                   1

N.Y. Civ. Rights § 51                                                                                1, 20

**Rules**

Fed. R. Civ. P. 12(b)(6)                                                                              9

**Treatises**

5 Wright & Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)                   8

Restatement (Second) of Torts § 577A                                                        18

Plaintiff Glynn Wilson respectfully submits this brief in opposition to the Rule 12(b)(6) motion to dismiss filed by Defendants Veritas Consulting Group Inc. ("**Veritas**" or the "**Company**"), Heather Joy Koch, Robert Koch, and Ron McIntyre (collectively, "**Defendants**"). See generally Dkt. 20-1, Defendants' Memorandum of Law in Support of Their Motion to Dismiss (Nov. 24, 2021) (the "**Motion**" or "**MTD**"). While Dr. Wilson's "**Complaint**" names a fifth defendant, Steven Goldberg, he has not appeared in this case and he did not join Defendants' Motion. See id. at 7 n.3; see also generally Dkt.

## PRELIMINARY STATEMENT

This is a simple case. Section 50 of New York's Civil Rights Law makes it a misdemeanor to use a person's name, portrait, or picture for advertising or trade without prior written consent. N.Y. Civ. Rights § 50. Section 51, meanwhile, allows Section 51 victims to sue for injunctive relief and compensatory damages, i.e., "the fair market value of the use for the purposes of trade of [his] face, name, and reputation." N.Y. Civ. Rights § 51 ("**Section 51**"). If the defendant knowingly used the plaintiff's likeness, a jury may award exemplary damages. Id.

Defendant Robert Koch asked Plaintiff Glynn Wilson to associate with Defendant Veritas as an "advisor," and Dr. Wilson refused. No Defendant ever obtained Dr. Wilson's written consent to allow Veritas to advertise itself by using Dr. Wilson's name, picture, or likeness.

Yet on September 2, 2021, Dr. Wilson learned that Veritas's website claimed he was as one of its two "Advisors." Consequently, Dr. Wilson sued Defendants for violating Section 51.

1

Defendants do not dispute that they failed to obtain Dr Wilson's written consent before advertising him as a "Team" member and "Advisor." <u>See generally</u> Mot. They move to dismiss anyway, relying on two affidavits to argue that (1) Dr. Wilson orally authorized Defendants' use of his name, photo, and likeness, (2) because Veritas's website, including Dr. Wilson's profile page, was published in December 2019, Dr. Wilson's complaint is time-barred, and (3) the only culpable individual Defendant is Mr. Koch. Defendants also argue, and Dr. Wilson concedes, that the Civil Rights Law preempts his unjust enrichment claim.

Defendants' factual attack, entirely premised on materials outside the pleadings and unavailable to Dr. Wilson, is no basis for 12(b)(6) dismissal. The Court should deny Defendants' motion to dismiss Dr. Wilson's Section 51 claim and to dismiss Mrs. Koch, Mr. McIntyre, and Mr. Goldberg from this suit.

## BACKGROUND

### I.     Dr. Wilson Refused to Associate with Defendants

Plaintiff Glynn Wilson is a medical doctor who has been the Board Chair and executive officer of multiple publicly-traded companies. Dkt. 1, Complaint ¶ 2 (Oct. 8, 2021) (the "**Complaint**" or "**Compl.**"). Defendant Veritas, meanwhile, advertises itself as a "consulting firm" that "was formed to provide undervalued public companies true access to institutions, hedge funds, retail brokerage firms, independent portfolio managers, analyst and obviously accredited investors." Id. ¶ 3.

Defendants Heather Joy Koch, Ron McIntyre, and Steven Goldberg own Veritas. Id. ¶ 4. Veritas's website states that Mrs. Koch is its "Secretary and Treasurer," Mr. McIntyre is its "Partner," and Mr. Goldberg is its "Senior Partner." Id. ¶¶ 5–8. Defendant Robert Koch is the Company's "Global Head of Business Development." Id. ¶ 9. While Veritas's website does not advertise that Mr. Koch is a partner, and Mr. Koch purports to have no ownership stake in Veritas, he and Mrs. Koch created Veritas together. Id. ¶ 5.

Dr. Wilson has never worked for or otherwise been associated with Veritas, nor has he ever signed any advisory or other contract with Veritas. Id. ¶¶ 14–15. Dr. Wilson has never been compensated by Veritas. Id. ¶ 19. And although Mr. Koch asked Dr. Wilson to join Veritas as an advisor, Dr. Wilson refused that offer. Id. ¶¶ 16–17. Dr. Wilson never agreed to allow Veritas to use his name, face, biography, or credentials to advertise itself. Id. ¶ 18.

**II.      In September 2021, Dr. Wilson Learned that Defendants were Advertising Him as a Veritas "Team" Member and "Advisor"**

Yet on September 2, 2021, Dr. Wilson learned that Veritas was advertising him as a key "Team" member who was one of the Company's two "Advisors." Id. ¶ 10. The Company's website included a separate profile page just for Dr. Wilson, which displayed his photograph and purported to describe his relevant expertise

> Glynn brings an extensive background of success in corporate management and product development with tenures in both multinational and start-up organizations. He was formerly Head of Drug Delivery at SmithKline Beecham Pharmaceuticals, Research Area Head in Advanced Drug Delivery at Ciba-Geigy Pharmaceuticals, and Founder, CEO and Chairman of TapImmune Inc. for 12 years which became Market Therapeutics through merger. At TapImmune he licensed cancer vaccine technology platforms and established the clinical pipeline.

Id. ¶¶ 12, 13; see also id. Exhibit A.

Defendants knew that Dr. Wilson did not and would not authorize using him to advertise Veritas. Id. ¶ 21. In fact, in August 2020, Dr. Wilson's company sued Mr. Koch for extortion in the Southern District of New York. Id. ¶ 22. Upon information and belief, all four Individual Defendants actually participated in misappropriating Dr. Wilson's name, portrait, and resume to promote Veritas, their shared commercial endeavor. Id. ¶ 20.

### III.    To Argue that Dr. Wilson's Complaint Fails to State a Claim, Defendants Rely on Their Own Affidavits

To support their Motion, Defendants submitted two affidavits and seven exhibits. See generally Dkt. 20-2, Affidavit of Robert Koch (Nov. 24, 2021) ("**Koch Aff.**"); Dkt. 20-3, Affidavit of John Cradock (Nov. 24, 2021) ("**Cradock Aff.**").

John Cradock, who is not a party to this action, attests that he owns an information technology firm. Cradock Aff. ¶ 3. He does not purport to have had any role in creating or maintaining Veritas's website. See generally id.

Instead, Mr. Craddock states that on "[o]n November 24, 2021"—the very same day that Defendants filed their Motion—he "conducted a search for the archived website of Defendant Veritas" using "a service called the 'Wayback Machine.'" Id. ¶ 4. Mr. Cradock testifies that "a section with the URL, http://veritascg.net/dr-glynn-wilson/, existed on Veritas's website as of December 23, 2019," but "[u]nfortunately, the Wayback Machine apparently did not capture any of the content specifically designated for each of the Veritas'[s] team members because when [he] clicked on each name, there was no archived content from December 23, 2019." Id. ¶¶ 9–10.

Mr. Cradock does not make further attempts to describe the content of Veritas's website, nor does he analyze whether and the extent to which Veritas ever changed its advertisements of Dr. Wilson. See generally id.

Mr. Koch's affidavit, meanwhile, purports to provide "facts" that he "was the sole individual associated with Veritas in charge of the creation of Veritas's website," as well as "the only individual associated with Veritas who had any contact with [Dr. Wilson] concerning his willingness to be an advisor to Veritas, and the only individual associated

with Veritas who had any contact with [Dr. Wilson] relating to the publication of his name, picture, and biography on Veritas's website." Koch Aff. ¶¶ 7, 20.

Mr. Koch also claims that Dr. Wilson orally told him that he "was willing to be an advisor to Veritas," and "[i]n reliance on [Dr. Wilson's] representation," asked a third-party contractor to add Dr. Wilson to Veritas's website "[i]n Fall 2019." Id. ¶¶ 5–9. Mr. Koch further claims that he emailed Dr. Wilson a link to Veritas's profile page and "[Dr. Wilson's] profile" on November 19, 2021, and that in response, Dr. Wilson orally "called [Mr. Koch] and told [him] that [Dr. Wilson's] profile page on the Company's website looked good and he had no changes." Id. ¶¶ 12–13.

Finally, Mr. Koch attests that Veritas's website, including Dr. Wilson's profile page, was "published and became available on December 16, 2019," but Dr. Wilson's profile was removed "no later than early morning on September 14, 2021," after receiving a September 10 cease-and-desist letter from Dr. Wilson's counsel. Id. ¶¶ 17, 19, 22, 24.

**LEGAL STANDARD**

The dispositive issue of any Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

To decide this Motion, the Court "must limit its consideration to the allegations 'contained within the four corners of the [C]omplaint.'" Ayala v. Metro One Sec. Sys., Inc., No. 11-CV-233 JG ALC, 2011 WL 1486559, at *3 (E.D.N.Y. Apr. 19, 2011) (quoting Goldberg v. Danaher, 599 F.3d 181, 183–84 (2d Cir. 2010)). The Court must accept all well-pleaded facts to be true and "draw all inferences in favor of" Dr. Wilson. G-I Holdings, Inc. v. Baron & Budd, 238 F. Supp. 2d 521, 534 (S.D.N.Y. 2002) (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993)); Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000)).

Furthermore, Defendants' statute of limitations affirmative defense "is properly raised on a Rule 12(b)(6) motion only where the defect as to timeliness appears on the face of the complaint." Voronina v. Scores Holding Co., No-16-CV-2477 (LAK), 2017 WL 74731, at *5 (S.D.N.Y. Jan. 5, 2017) (citing Ellul v. Congreg. of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014)) (denying 12(b)(6) dismissal motion where defendant argued that Section 51 claim was time-barred). Regardless of procedural posture, Defendants bear the burden of proving their affirmative defense. Marshall v. Marshall, No. 08 Civ. 1420 LB, 2012 WL 1079550, at *20 (E.D.N.Y. Mar. 30, 2012), aff'd, 504 F. App'x 20 (2d Cir.

2012) (<u>inter alia</u>, rejecting defendant's post-trial statute of limitations defense on Section 51 claim).

Regardless, so long as the Complaint pleads "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting Dr. Wilson's claims, they must survive Defendants' Motion. <u>See</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556 (2007) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>accord</u> <u>id.</u> at 555 (citing 5 Wright & Miller, Federal Practice and Procedure § 1216 at 235–36 (3d ed. 2004)) (court should not dismiss complaint if it pleads facts that "raise a right to relief about the speculative level").

## ARGUMENT

It is axiomatic that Rule 12(b)(6) motions must attack the sufficiency of the operative pleading—here, Dr. Wilson's Complaint. Yet Defendants' "Facts" section is five sentences of argument—and only five sentences of argument—and purports to cite just five paragraphs of Dr. Wilson's 43-paragraph Complaint. <u>Compare generally</u> MTD <u>and</u> Compl.

Instead of analyzing and explaining how the Complaint supposedly states no claim, Defendants annex two affidavits that do nothing but advance their own view of the facts. While perhaps a useful preview of Defendants' ultimate arguments, their factual attack cannot justify 12(b)(6) dismissal. In doing so, Defendants fail to rebut Dr. Wilson's allegations that they "knowingly used" his likeness to advertise themselves, despite lacking Dr. Wilson's prior written consent. <u>See</u> Compl. ¶¶ 33–38.

Therefore, while Dr. Wilson agrees that his unjust enrichment claim is preempted by statute, see Zoll v. Ruder Finn, Inc., No. 01 Civ. 1339(CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004), the Court should deny Defendants' Motion to dismiss the Section 51 claim, and to dismiss Mrs. Koch and Mr. McIntyre from this case.

## I. Defendants' Affidavits and Exhibits are Irrelevant to Whether Dr. Wilson Adequately Alleged His Claim

All of the Motion's 12(b)(6) dismissal arguments rely on Defendants' own self-serving affidavits and exhibits. See generally Mot. While Defendants' factual defenses may be relevant on summary judgment, they provide no basis at all to find that **Dr. Wilson** "fail[ed] to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6); accord Chambers v. Time Warner, Inc., 282 F.3d 147, 154 (2d Cir. 2002) (citations omitted) ("Consideration of extraneous material in judging the sufficiency of a complaint is at odds with the liberal pleading standard of [Rule 8].").

"[A] district court errs when it considers affidavits and exhibits submitted by defendants" to decide a Rule 12(b)(6) motion. Brown v. Marriott Int'l, Inc., No. 14CV5960SLTMDG, 2017 WL 4484194, at *3 (E.D.N.Y. Sept. 29, 2017) (citing Kopec v. Coughlin, 922 F.3d 152, 155 (2d Cir. 1991)); see also, e.g., Faulkner v. Beer, 463 F.3d 130, 134 n.1 (2d Cir. 2006) (citations omitted) ("[I]t would have been error for the district court to have dismissed the amended complaint on the basis of [declarations and affidavits], rather than on the basis of the amended complaint."); Friedl v. City of New York, 210 F.3d 79, 84 (2d Cir. 2000) (observing that courts cannot rely on "factual contention [ . . . ] contained in a declaration" to decide a 12(b)(6) motion); Zhao v. L&K Rest., Inc., No. 14-

CV-6103 VEC, 2015 WL 1809115, at *2 (S.D.N.Y. Apr. 21, 2015) (refusing to consider defendant's "self-serving and conclusory [affidavit . . . ] at the pleading stage").

Indeed, for any document "to form the basis of dismissal, the plaintiff must also have had actual notice of it." DeLuca v. AccessIT Grp., Inc., 594 F. Supp. 2d 54, 60 (S.D.N.Y. 2010). Therefore, Second Circuit courts refuse to grant 12(b)(6) dismissal simply because defendants assert alternative facts. See, e.g., Chambers, 282 F.3d at 154 (holding that the district court erred in considering a set of documents because, inter alia, the operative complaint "[did] not refer to the [documents and plaintiffs apparently did not rely on [those documents] in drafting it"); Sheppard v. United States Tennis Ass'n, Inc., No. 17CV5719AMDSMG, 2018 WL 3941941, at *2 (E.D.N.Y. Aug. 16, 2018) (refusing to consider "[defendants] lawyer's affidavit concerning his review of USTA records about which the plaintiff would not have known, and upon which he did not rely, when drafting the complaint.").

But neither Dr. Wilson's Complaint nor Defendants' Motion gives any reason to believe that Dr. Wilson "possessed or knew about" the "evidence" proffered in Defendants' affidavits, let alone that Dr. Wilson relied on that evidence in drafting and filing his Complaint. See Rothman, 220 F.3d at 88; Kramer v. Time Warner, Inc., 937 F.2d 767, 773 (2d Cir. 1991); see also Chambers, 282 F.3d at 153 ("a plaintiff's **reliance** on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough.") (emphasis in original).

Nor are Defendants' testimony or documents so unimpeachable that they merit judicial notice. <u>Accord</u> <u>Collinton v. Bunt</u>, No. 15-CV-6580 (CS), 2016 WL 7443171, at *5 (S.D.N.Y. Dec. 27, 2016), <u>aff'd</u>, 709 F. App'x 82 (2d Cir. 2018) (on 12(b)(6) motion, taking judicial notice of court records but refusing to consider "Google Maps printout[] because it is not a public record or otherwise not subject to reasonable dispute").

Defendants' affidavits and exhibits simply are irrelevant to their 12(b)(6) Motion. <u>See, e.g.</u>, <u>Twombly</u>, 550 U.S. at 583–84 (quoting <u>Scheuer</u>, 416 U.S. at 236) ("[A] federal court reviews the sufficiency of a complaint **before** the reception of any evidence either by affidavit or admissions") (emphasis added); (refusing to consider "extraneous materials," including defendants' affidavit); <u>Collinton</u>, 2016 WL 7443171, at *5 ("Courts ordinarily do not consider factual assertions contained in affidavits submitted in support of or opposition to a motion to dismiss."); <u>Ayala</u>, 2011 WL 1486559, at *3 (refusing to consider defendants' "affidavits and other evidentiary materials" in support of their 12(b)(6) motion. Because the Motion merely advances Defendants' own preferred facts instead of identifying pleading deficiencies, the Court should preserve Dr. Wilson's Section 51 claim against all of the Defendants.

## II.     The Complaint Explains Why Veritas's "Secretary and Treasurer," "Senior Partner," and "Partner" are Liable for Violating Section 51

Defendants concede that the Complaint "arguably state[s] a claim 'above the speculative level' against Veritas and / or Mr. Koch," but argue the Court should dismiss the Complaint against Mrs. Koch, Mr. McIntyre, and Mr. Goldberg because that "all of the factual allegations in the Complaint relate solely to Defendants Veritas and Mr. Koch" and that Dr. Wilson's "information and belief" allegation is the "single, conclusory allegation" that supports his claims against Mrs. Koch and Mr. McIntyre. See Mot. 6–7.

In doing so, Defendants just plain ignore the Complaint's inconvenient factual allegations, including that:

- "Mrs. Koch, Mr. McIntyre, and Mr. Goldberg own Veritas," Compl. ¶ 4;
- "Mr. and Mrs. Koch created Veritas," id. ¶ 5;
- "Veritas's website states that Mrs. Koch is its 'Secretary and Treasurer,'" id. ¶ 7;
- "Veritas's website states that Mr. McIntyre is its 'Partner,'" id. ¶ 8;
- "Veritas's website states that Mr. Goldberg is its 'Senior Partner,'" id. ¶ 9;
- "Upon information and belief, all four Individual Defendants actually participated in the wrongful use of Dr. Wilson's name, portrait, and resume—without Dr. Wilson's written permission—in connection with Defendants' investor relations and stock promotions businesses," id. ¶ 20; and
- "Defendants knew that Dr. Wilson did not and would not authorize their advertisement," especially because Dr. Wilson's company sued Mr. Koch in August 2020, id. ¶¶ 21–23.

Furthermore, Veritas's website now advertises that there is nobody associated with the Company except for Mr. Koch, Mrs. Koch, and Mr. McIntyre. See Exhibit A, Declaration of Kari Parks in Opposition to Defendants' Motion to Dismiss (Dec. 20, 2021).

There is no reason why Dr. Wilson, a stranger to the Company, would have any insight into which of Veritas's four employees and executives actively decided to profit off of his name without obtaining written consent—but given that they comprise the entirety of the Company, their culpability is more than sufficient to support Dr. Wilson's "information and belief" that all of the individual Defendants worked in concert to violate Section 51. <u>Lefkowitz v. McGraw-Hill Glob. Educ. Holdings, LLC</u>, 23 F. Supp. 3d 344, 356 (S.D.N.Y. 2014) (quoting <u>Arista Records, LLC v. Doe 3</u>, 604 F.3d 110, 120 (2d Cir. 2010)) (<u>Twombly</u> "does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible:).

Because the Complaint pleads more than enough facts to give each Defendant "fair notice of the claim asserted so as to enable him to answer and prepare for trial," the Court should allow Dr. Wilson's Section 51 claim to proceed against all of the Defendants. <u>See</u> <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.").

### III.    Dr. Wilson's Section 51 Claim is Not Time-Barred

Defendants correctly observe that Section 51 claims bear a one-year statute of limitations period calculated using the "single publication rule," under which a cause of action accrues the first time that the offending material is disseminated. Fischer v. Forrest, 14 Civ. 1304 (PAE) (AJP), 14 Civ. 1307 (PAE) (AJP), 2017 WL 1063464, at *5 (S.D.N.Y. Mar. 21, 2017) (citing N.Y. C.P.L.R. § 215(3)); Nussenzweig v. diCorcia, 9 N.Y.3d 184, 188 (2007) (single publication rule originates in defamation law).

But Defendants ignore multiple issues that are crucial to the statute of limitations analysis, including (1) how to calculate "publication date," (2) republication, and (3) how consent and its withdrawal affect the statute of limitations.

All of these threshold questions emphasize that Section 51's limitations period is a fact-intensive inquiry that rarely should be resolved at the pleadings stage. See, e.g., Voronina, 2017 WL 74731, at *5 (inter alia, denying 12(b)(6) motion to dismiss Section 51 claim as time-barred where "the complaint does not even begin to exclude the possibility" that photos' time stamps "are wrong for any of a host of reasons"); Marshall, 2010 WL 6577553, at *4–5 (quoting Zoll v. Jordache Enter. Inc., No. 01 Civ. 1339, 2002 WL 31873461, at *9 (S.D.N.Y. Dec. 24, 2002)) (publication date "is frequently difficult to determine, depending on the facts of each case").

14

### A. The Complaint Does Not Allege Facts Suggesting, Let Alone Proving, that Dr. Wilson's Claim is Time-Barred

The Complaint does not allege when the offending material was published, but does plead that Dr. Wilson discovered it on September 2, 2021—just a month before he filed this action. <u>See</u> Compl. ¶ 10. Therefore, because the face of the Complaint does not suggest that Dr. Wilson's Section 51 claim is time-barred—and because Defendants' self-serving affidavits and exhibits cannot sustain their Motion—the Court should deny Defendants' motion. <u>See, e.g.</u>, <u>Voronina</u>, 2017 WL 74731, at *5 (refusing to dismiss Section 51 claim as time-barred, noting that the argument "is properly raised on a Rule 12(b)(6) motion only where the defect as to timeliness appears on the face of the complaint."); <u>Russo v. Huntington Town House, Inc.</u>, 184 A.D.2d 627, 628 (2d Dep't 1992) (refusing to find Section 51 claim time-barred where complaint alleged that violations "have continued 'to the present time'").

**B. Dr. Wilson Discovered Defendants' Section 51 Violation Just One Month Before Filing the Complaint**

Furthermore, New York law is not entirely clear on how to identify the beginning of a Section 51 limitations period. Causes of action for libel—a body of law that provides much more analysis of the governing single publication rule—"has been repeatedly defined as the date on which the offending material was placed on sale **or** became generally available to the public." E.B. v. Liberation Publications, Inc., 7 A.D.3d 566, 567 (2d Dep't 2004) (citing Gregoire v. Putnam's Sons, 298 N.Y. 119, 126 (1948); Love v. Morrow & Co., 193 A.D.2d 586, 589 (2d Dep't 1993)).

Yet New York courts have repeatedly found that a plaintiff's discovery date—not the defendant's publication date—triggers Section 51's statute of limitations. See, e.g., Ruder Finn, 2004 WL 42260, at *2 ("[T]he first moment when Plaintiff **could have or should have known** about the tape [was] the critical moment for statute of limitations analyses. It is for this reason that the aw in this area focuses on when potentially tortious material 'goes public' rather than when it enters non-public distribution streams.") (emphasis added); Pelton v. Rexall Sundown, Inc., No. 99 CIV 4342 JSM, 2001 WL 327164, at *4 (S.D.N.Y. Apr. 4, 2001) ("Plaintiff had ample opportunity **to discover** the alleged violation of Section 51 before the statute of limitations expired.") (emphasis added); D'Andrea v. Rafla-Demetrious, 3 F. Supp. 2d 239, 253 (E.D.N.Y. 1996), aff'd, 146 F.3d 63 (2d Cir. 1998) (inter alia, denying motion for summary judgment dismissal of Section 51 claim as time-barred where plaintiff argued that "his claim is based on the later brochure which he **discovered** less than one year before he filed this action") (emphasis added); Castel v. Jean Norihiko Sherlock Corp., 159 A.D.2d 233, 233 (1st Dep't 1990) (dismissing

Section 51 claim because plaintiff filed claim "more than one year after he **learned** of the distribution of the video cassettes") (emphasis added); but see Brooks v. The Topps Co., No. 06 Civ. 2359 (DLC), 2007 WL 4547585, at *4 (S.D.N.Y. Dec. 21, 2007) ("There [is] no basis to find that New York courts would adopt a discovery rule to extend the statute of limitations for a right of publicity cause of action.").

Under this line of cases, there is no possibility at all that Dr. Wilson's claim is time-barred: he discovered Defendants' violation just one month before filing the Complaint.

### C.  Defendants' Affidavits Highlight Even More Fact Questions

Defendants' affidavits regarding the creation of Veritas's website raise even more questions—and in doing so, demonstrate that the limitations question is premature.

For example, Defendants argue that Dr. Wilson did, in fact, consent to the advertisement. See MTD at 7–8. Yet Defendants neglect to mention that people can withdraw their Section 51 consent at any time, thereby causing the limitations period to begin at that point. See, e.g., Comolli v. Huntington Learning Centers, Inc., 117 F. Supp. 3d 343, 350 (S.D.N.Y. 2015) ("Because plaintiffs are unsure of the precise period of consent, any argument for dismissal based on the statute of limitations is necessarily premature"); Welch v. Mr. Christmas Inc., 57 N.Y.2d 143, 146 (1982) (affirming award of exemplary damages where jury found that defendant knew plaintiff's consent to commercial had expired).

Defendants' Motion also ignores that "republication" of offending material triggers a new limitations period. Firth v. State, 98 N.Y.2d 365, 371 (2002); cf. Nussenzweig, 9 N.Y.3d at 188 (the limitations period "runs from the date of the **most**

**recent** violations of the statute") (emphasis added). Republication occurs "upon a separate aggregate publication from the original, on a different occasion, which is not merely a delayed circulation of the original edition." Firth, 98 N.Y.2d at 371 (citing Restatement (Second) of Torts § 577A) (republication "in a later edition of a book, magazine or newspaper may give rise to a new cause of action"); see also Giuffre v. Dershowitz, 410 F. Supp. 3d 564, 571 (S.D.N.Y. 2019) (citation omitted) (republication "has[] been found actionable where additional material is added to the prior statements."); cf. Restatement (Second) of Torts § 577A ("[I]f the same defamatory statement is published in the morning and the evening editions of a newspaper, each edition is a separate single publication and there are two causes of action.").

Like Section 51's other material questions, whether and when material was republished is a "fact-intensive" question. Comolli, 117 F. Supp. 3d at 351; accord Fischer, 2017 WL 1063464, at *5 (citation omitted) ("Whether an item has been republished is evaluated under a multi-factor test."). For example, if offending material "is relocated to a second website, the relocation to the new website constitutes a republication [ . . . ] acting to restart the statute of limitations." Rare 1 Corp. v. Moshe Zwiebel Diamond Corp., 13 Misc. 3d 279, 281 (Sup. Ct. 2006) (citation omitted). Changes to a website "made either with the intent or the result of communication the [offending] information to a new audience" also may start a new limitations period. Firth, 98 N.Y.2d at 371 ("some alteration or change in form in its continued availability on the internet" may comprise republication).

Defendants provide no law to support their argument that Dr. Wilson's Section 51 claim ripened "on the date that Veritas first published [his] name, picture, and biography on Veritas's website." <u>See</u> MTD at 5. Nor, despite offering two affidavits and seven exhibits, do they even provide any facts to suggest that Dr. Wilson's profile page remained materially unaltered since December 2019. <u>See generally</u> <u>id.</u> In fact, Defendants' witness testifies that he has no insight whatsoever into the content of that page on its alleged December 2019 publication date, let alone at any other time thereafter. <u>See</u> Cradock Aff. ¶ 10 ("Unfortunately, the Wayback Machine apparently did not capture any of the content specifically designated for each of Veritas's team members because when I clicked each name, there was no archived content from December 23, 2019.").

Defendants' inappropriate, irrelevant affidavits and exhibits demonstrate exactly why the Section 51's claim timeliness cannot be determined at the pleadings stage. The Court should deny their Motion.

**IV.    Dr. Wilson's Entitlement to Exemplary Damages is Yet Another Fact Question**

Finally, the Court also should reject Defendants' premature attempt to strip Dr. Wilson's right to pursue statutory exemplary damages. See N.Y. Civ. Rights § 51 (allowing exemplary damages where defendant "knowingly" used likeness without written consent).

It is axiomatic that "intent is a question of fact." Gitter v. Gitter, 396 F.3d 124, 132 (2d Cir. 2005). Dr. Wilson pleads that he "has never worked for or otherwise been associated with Veritas," "has never signed any advisory or other agreement with Veritas," he "did not accept [Mr. Koch's] offer" "to be a Veritas advisor," and he "never agreed to allow Veritas to use his name, face, biography, or credential to advertise itself on its website." See Compl. ¶¶ 14–18.

Dr. Wilson need not purport to be a mind-reader for his exemplary damages claim to survive. Cf. Duran v. Henkel of America, Inc., 450 F. Supp. 2d 337, 355 (S.D.N.Y. 2020) ("a party can plead fraudulent intent based on information and belief where the knowledge is uniquely within the defendant's control" if the complaint pleads "additional specific facts to give rise to fraudulent intent").

Nor should the Court entertain Defendants' attempt to shift their own burden to obtain written consent to Dr. Wilson. Compare MTD at 8 ("Notably, nowhere in the Complaint does Dr. Wilson state that he told Mr. Koch that he did not want to be an advisor to Veritas, or that he did not want his name or photo to be included on Veritas's website.") and Welch, 57 N.Y.2d at 151 (affirming trial court's finding that "plaintiff's right to exemplary damages turned on whether knew plaintiff had not consented").

20

## CONCLUSION

Defendants have no facial attack on Dr. Wilson's Section 51 claim. And even if Defendants' proffered "facts" were relevant to whether Dr. Wilson pleaded sufficient facts to state his claim, they would do nothing but raise even more factual questions that must be resolved through discovery.

Therefore, Dr. Wilson respectfully requests that the Court deny Defendants' motion to dismiss the Section 51 claim and deny Defendants' motion to dismiss Mrs. Koch, Mr. McIntyre, and Mr. Goldberg from this action.

Dated: December 20, 2021
    New York, New York

Respectfully submitted,

**GUSRAE KAPLAN NUSBAUM PLLC**

/s/ Martin H. Kaplan
Martin H. Kaplan
Kari Parks
120 Wall Street, 25th Floor
New York, New York 10005
(212) 269-1400
(212) 809-4147
mkaplan@gusraekaplan.com
kparks@gusraekaplan.com

*Counsel for Plaintiff Glynn Wilson*

21